All right. Good morning, Counsel. Our next case is the Mitchell Law Firm v. Bessie Jeanne Worthy Revocable Trust. We'll first hear from the appellant. Whenever you're ready, Counsel. Thank you, Your Honor. Good morning. Greg Mitchell for the appellants, and may it please the court. I believe that the issues in this case are fairly straightforward, Your Honors. The first two are intertwined and relate to standing. Does the appellee herein have standing to have even appeared in this case? And number two, if so, whether appellee's actual appearance in the original trial court matter prevents him from collaterally attacking the judgment. Appellants urge that no matter how you answer the first question, you ultimately must rule against appellees. If on the one hand, appellee does not have standing, then that concludes the inquiry and the trial court erred in even considering appellee's Rule 60B motion. If on the other hand, appellee has standing, then it is only as the substitute for the real party and interest, Larry Hodge. And if that's the case, then appellee appeared in the original trial court case with counsel and consented to a judgment. Appellee had the opportunity to object to jurisdiction then and cannot now collaterally attack the judgment rendered. The third and final issue relates to the district court's order that appellant return monies received for services provided. We believe that under the court's own rationale, if it had no jurisdiction over the parties, then it had no jurisdiction to order the return of funds received. But from a more fundamental standpoint, we believe that any such order would be premature based on the current status of the parties. I'll start with the last issue, which I'll reference as issue number three, and then work my way back to the first two. And in addressing issue number three, I'll pick up where I left off in the introduction regarding the current status of the parties. I think it's important that we keep in mind where we are right here today. As we sit here today, all we have are fees that were charged, fees that were approved by the then administrator and trustee with authority to approve, and then fees that were paid. If there was anything inappropriate about the fees that were charged, then the appellee herein has every right to file suit against appellant. And importantly, as is reflected in the record and in the briefs, appellee has in fact filed suit against appellant in the probate court. That suit alleges causes of action that if found in his favor could in fact lead to a judgment requiring appellant to return those fees. That litigation is pending and ongoing. If there was anything inappropriate in the then administrator and trustee Larry Hodge approving of those fees, then that too can be addressed in the context of the current litigation in probate court, because that suit names both appellant herein and Larry Hodge, the then administrator and trustee. And if there was anything inappropriate in the bank paying those fees, that too can also be has in fact raised just about every one of those issues in litigation in the probate court. And although the entire record of the state court action is not in this record, there are documents from that case that are in this record. And I think this court could at least take judicial notice of the existence of that case. But in any event, I think the important point to take away is that to the extent that anything regarding the payment of those fees was inappropriate, then appellee has recourse in the state court. But again, I come back to where we are today, and that is simply fees being charged, approved by the party with authority to approve, and then paid. It is simply unnecessary to require a return of the fees in order to put the parties back where they were, because where they were was that the fees had been incurred, approved by the person who had the authority at the time to approve, and paid. Everything else at this point is simply allegations of wrongdoing. So now we're turning to issues one and two. To start with a big picture perspective, appellees have sort of backed themselves into a corner. And by that I mean they can't have it it can only be as the substitute administrator and trustee, because otherwise he was just a beneficiary at the time of the district court case. We submit that Rodney Hodge does not have standing to be here today. And the reason for that is the Texas case law that we cited in our brief, finding that the real party and interest in a suit involving a trust or an estate is the trustee or administrator respectively. At the time of the underlying suit in the district court in 2016, the real party and interest was Larry Hodge, who was the trustee of the trust and administrator of the estate at the time. There's no other party that could have been sued. Larry Hodge, not Rodney Hodge, was the contracting party for legal services. At that time, Rodney Hodge was simply a beneficiary and he was never a party to the contract for legal services. We also point to case law in our brief, in particular the Texas Supreme Court's decision in Huey v. DeShazo, 922 Southwest 2nd 920, Texas Supreme Court case from 1996, where the Texas Supreme Court explicitly rejected the notion that a trust or estate itself is the true party and interest. Now, having said all that, if we're wrong and Rodney Hodge does have standing, we believe appellant still wins. And that is because once again, if Rodney Hodge has standing to appear, then it could only be as a substitute trustee or substitute administrator. And in that case, then the fact that he's a substitute representative of the real party means that the real party and interest was present and appeared in the original suit in 2016. Importantly, the representative of the trust and estate appeared with counsel and therefore had every opportunity to object to jurisdiction. Do you agree that now looking at it, there was no jurisdiction and you're just saying, but there's preclusive effect. I mean, do you agree that we should look to the residency of the deceased and therefore there was no diversity? We do agree with that principle, your honor, that it was, it was a mistake. And I, you know, it was my mistake. I take full credit for it. Honestly, you know, I could make all sorts of excuses. I had never sued an estate. I knew that the representative of the estate lived in California and just made a mistake. So from, from that standpoint, we agree with the court's decision to the extent of the, of the subject matter jurisdiction. What about judge Lynn's conclusion that first of all, there was never a direct ruling on jurisdiction in the originally. And she says there's no preclusive effect to the implicit acceptance of jurisdiction because it was really not an adversarial suit. I mean, as I understand it, it was, I think someone who shared an office with you was a counsel on the other side and, and you'd filed this within days of the state court saying, no, you're not going to get fees out of, from the state court. Respond to her point that there was really no adversarial nature of that first case that would warrant giving preclusive effect to any jurisdictional decision that might've implicitly been made. I think I would start by, by disagreeing with the, with the initial point as to whether it was adversarial. The, the, the fact is that it was adversarial from the standpoint of an opposing party, having you know, having counsel being represented. I think the fact of the matter is that Larry Hodge simply did not dispute the fees. Larry Hodge knew that the fees had been incurred. What was your relationship with the original opposing counsel? We have a relationship simply that we officed in the same office. There was no, there was no firm relationship. We've never worked in the same firm. We share office space. And it's not uncommon for either one of us to refer cases back and forth to each other. So I- Is it common for you to refer cases where you're suing each other? Where we're suing each other. I mean, we weren't suing, I've never sued Ms. Lindauer if that's, if I understand the question correctly. I mean, do you refer cases to your, to your co-counsel as, as the adversarial party? That has happened in the past. I do a good amount of bankruptcy work. And so as does Ms. Lindauer. So on occasion I have had a debtor in, and there have been, has been a creditor come to me that I told them that I couldn't represent them, but I've referred them to Ms. Lindauer. I mean, obviously there, it's not something that's in the record that I can prove one way or the other. Ms. Lindauer and I operate separate firms. Even though we have office space together, you know, neither one of us are in the office that often because number one, we're both very busy. And number two, you know, I work from outside the office quite a bit as does she. So it, it is something that has occurred. It's certainly not, not always the case when we refer cases back and forth, but, but no, it was not uncommon for, for something like that to have happened. So I believe that, that the case was adversarial, but nevermind. Did she know that the probate court had just rejected giving you, paying your attorney's fees out of the estate funds? Well, I guess, let me first, I'll answer the question that, that to my knowledge, Ms. Lindauer has very little knowledge of the, the happenings of the probate court. However, I would, I would somewhat dispute the characterization of, of the court's question or the foundation of the question. The probate court did never specifically rejected my fees. The probate court decided, and in subsequent communication, and I believe there's transcript in the record that specifically says that the court simply did not address that issue at that time. It was not rejected. And so I think it's an important distinction that the, the probate court did not look at, at the request for fees and say, no, we are not what we are denying that the court simply did not rule on those on that request for expenses. And that was later clarified in a transcript in which the opposing party, Rodney Hodge, had, had sought a, an injunction. And, and there's a transcript in the record of, of Judge Chapman explaining that, that those fees were, were, were not denied. And for that reason, he rejected the, the, the injunctive relief sought. So. Mitchell, I'm, I'm, I'm unclear then why you filed a federal suit. It's pending before the, before the, the court, state court and, and ruled on it. And why you, and very, it appeared to me that very quickly you moved to this, to the federal court. Your Honor, I, I understand the question. The, I can tell you that there was no, I guess, rush to do anything other than the fact that the, the case had concluded. And so from my perspective, as, as it related to my relationship with Larry Hodge, the administrator and trustee, the- But it was still open before you, you're saying that the matter was still pending in the state court and that it hadn't reached it yet. And then what you did was to engage a lawyer, that your client engaged your partner here with an understanding that there'd be no, no objection to the, to the fee. Well, what I was, what I was suggesting, Your Honor, was that, that there was a, the, the large portion of the representation of Mr. Hodge had concluded at that point. The, the state court case in which, had gone to trial and, and the jury had made its findings, the judgment had been rendered, rendered. And at that point, quite frankly, I was looking to get registered. And there was no particular reason I could have filed it in, in a, in another state court. The probate court did not have any sort of exclusive jurisdiction over that issue. I chose federal court simply because at the time I thought it was appropriate, obviously I'm admitting to that mistake. I thought that there was complete juris, excuse me, complete diversity, when as it turns out there was not based on the, the deemed jurisdiction of an estate, but, but nevertheless, there was no rush other than simply my, my representation is largely concluded and therefore I'd simply like to be paid for the tremendous amount of work that had been done over a large period of time. So with the, with the little time, I guess the, I was pointing out that the, that the representative had appeared with counsel and that there was no objection made to the, to the jurisdiction, even though there could have been. So as a result, we believe that the, the case law we cited regarding collateral attacks kicks in and precludes, I believe, from collaterally attacking the judgment. And I would point to the, this court's ruling in Brown versus Illinois Centennial Railroad, where it said that even if the exercise of subject matter jurisdiction was erroneous, it is still res judicata and not subject to collateral attack through Rule 60B4. And with that, I will yield the floor if there are no other questions. All right. And you'll have your time for rebuttal. We'll now hear from Mr. McDonald, whenever you're ready. Thank you, Justice Costa, Higginbotham, and Odom. Thank you so much for the opportunity to argue in front of you today. I grew up in the New Orleans area, alumni of Tulane. Hope you enjoy the city as much as I do. Miss it. Yes, sir. Now, what strikes me most is if you review Judge Lynn's transcript of the hearing per order, the appellant's argument that this was an accident is a fiction. It's clear from the pleadings, the procedural history of state probate court, and Judge Lynn herself even stated this is not accident. This is intentional. So, Judge, with that, let's review some of the procedural history of the probate court. On July 2016, the appellant represented judges as Rodney Hodge and Larry Hodge. If it pleases the court, I'd like to just say Larry and Rodney so there's no confusion. Is that okay? Sure. So, they had this jury trial, and Larry has found that he stole from the decedent while she was living, pursuant to a power of returning. Jury trial came back with that finding, Judge. On August 7, 2016, appellant filed a motion to get money from the estate account. On August 22, 2016, state probate court denied that motion. On August 22, 2016, the same day, in state court, probate court denied the appellant's motion. He filed a motion for reconsideration. On August 6, 2016, state probate court denied that motion for reconsideration. So, at this point, he was denied access to the probate account not once but twice by the state probate court. And two days after, September 8, two days after the second time, the state probate court said no. He filed this federal action that subject matter disappealed to. September 10, he asked the estate at the party, therefore, destroying complete diversity, rendering the federal court not having subject matter jurisdiction. On September 16, eight days after that, an agreed judgment is entered into, granting the plaintiff all the relief requested. The whole time, the state probate court knew nothing of the federal proceedings. The attorneys for the two pending state probate court proceedings knew nothing about the federal proceedings, and Judge Lynn made it clear she knew nothing about the state probate proceedings. Had she known, she would have kicked the petition off. On September 19, 2016, he sends the agreed order to Citizens National Bank and converts in excess of $78,000 to his benefit. So, with that being in mind, let's look at the three points. Yes, the appellee definitely has standing. Two, the judgment is void and subject to collateral attack. And three, the district court has inherited authority to order the return of money converted by the appellate. First, Judge, let's just do a general introduction about standing. Mm-hmm. If you look at, just to simply review the appellate's complaint, amended complaint, he's suing the estate on his sole argument. He doesn't have the standing to bring the complaint or the amended complaint when he did. So, his own argument defeats his claim today, Judge. Second, let's look at standing of the administrator. Texas estate code 361.153c1, states that a successor representative may make himself or herself and may be made a party to issue, prosecute a buyer against the successor's predecessors. Kind of a tongue twister there. Second, estate code 351.351, a personal representative is required to use ordinary diligence to collect all claims and debts due to the estate and to recover possession of all acquired dissequently from the agreed final judgment because of his role as personal representative of the estate. As a result, the appellate is the proper party to do so because the successor representative may make himself or herself a party to the suit prosecuted by the successor's predecessors. Now, as far as the trustee, Judge, standing of the trustee, the Texas trust code provides that in an action by or against a trustee, and I'll proceed as having and serving a trustee, the trustee is a necessary party. That's web and Texas property code 111.00. The appellate does not dispute that Larry was trustee at the time that the underlining action was filed, that the trust has a stake in the proceedings or that Rodney is a lawfully appointed successor trustee. Therefore, Rodney has standing with respect to the trust. At this point, we establish his standing in respect to the trust and his standing in respect to the estate. And in review of 60B in cases, the part of 60B federal with a civil procedure, it states that a court may relieve a party or its legal representative from the final judgment. The general rule is that one must either be a party or legal representative in order to have standing to bring. That's correct. From the time Rodney was appointed as Larry's successor, he stepped into Larry's shoes, becoming the legal representative of the estate and trust and acquiring standards to pursue relief on behalf of the estate and the trust. In summary, the appellate has standing to receive relief from the final judgment. The case is cited in review of the appellate's brief and reply brief. The cases just simply do not support his argument. If the appellate's rationale is correct, then the court didn't. If the appellate's rationale is correct, then the federal court didn't have jurisdiction to even decide his complaint or admit a complaint. If you look at the motion for 60B, the original motion is filed Rodney Hodge as successor administrator and trust trustee. Finally, the Ray Malooly case he cites states that a trust can be a proper party if it's not timely objected to. He never objected to the trust being the party therefore that argument is further moot. Finally, the appellate wants to discuss public policy. Well, let's talk about this public policy in the appellate's mind. You can have an administrator, a trustee, steal from the estate, steal from the trust, resign, have a successor appointed, and guess what? That successor can't do anything about it. That's the appellate's argument. That's how absurd it is. That's why it simply fails. And behind all the appellate's smoking mirrors and illogical argument, the court never had subject matter jurisdiction over this case. Second judge, judgment is void and subject to collateral attack. A void judgment is subject to both direct and collateral attack. That's Browning. A 60B-4 motion from relief of judgment leaves no margin for consideration of the district court's discretion because the judgment itself is by definition void or not. That's court. Mr. McDonough, what do you want this court to do? Sustain the district court's final, you know, sustain the district court's finding that the order's void. Sustain the district court's actions. And with what result? That the order's void and that the appellant is ordered to return the funds that he converted. And the funds go where? Back to the estate to be distributed to the beneficiary, to the beneficiaries of the... When they go back to the estate, what court has jurisdiction over that? The county court of law one, which is the probate court in Ellis County, Judge. Okay. They go back to the custody court, essentially, probate court. Yes, Judge. I mean, they're estate funds. They were taken from the estate, so they have to go back to the estate. And that court would make the decision as to distribution? Yes, Judge. Okay. Would the question of the attorney's fee still be open at that juncture? Well, Judge, we don't have... In state court right now, in the state probate court, we don't have a request for attorney's fees at this point on file for the appellant. But somebody's got to approve the payment from the estate of the attorney's fees. Yes, Judge. And I want to point out that on February 9, 2012... Who would... Who would have... I'm sorry, Judge? Who would be the... Who in the state court system would be the approving body for the payment of these fees? That's Judge Jim Chapman. He's county court of law one, Judge. Okay. And that's still before him? Yes, Judge. He would have some sort of a proceeding or any court appearances to make that judge? Yes, Judge. Okay. And, Judge, I want to make the point known that when Larry was appointed in February 9, 2012, he had to seek authority from the court to expend any funds. And the assets in that account was held... They were held to a safekeeping agreement signed by the state probate judge. So not only was he not allowed access to that account twice, he broke the safekeeping agreement when he the order requesting the amount of money in the estate account. So to go back to the collateral attack argument, appellants claims that the estate and trust had an opportunity to litigate subject matter jurisdiction judge under the current proceeding is simply unconscionable. It's unconscionable because, as Judge Lynn stated herself in the transcript, because of the appellants awful pleading and using the federal district court in to convert money from the state funds, the probate court denied him access to trust. The fees that appellant... And, Judge, the fees that the appellants sued for were personal fees. They were fees of Larry individually, not fees of the estate, not fees of the trust. So why did the state funds... Why were estate funds improperly used to pay Larry's individual legal fees? And once again, the case decided by the insurance corp of Ireland that he cited personal jurisdiction and just simply do not support the statements regarding subject matter jurisdiction. Two cases are from the 1930s and do not apply. This case was filed with the original administrator and trustee. While the administrator trustee were being actively removed the state court and he was, Larry was removed as trustee administrator. This case is perfectly hidden from the state court and the two attorneys working on state court issues and was adjudicated in eight days with the state court not knowing any of the federal actions and the federal court not knowing any of the state probate court actions. Therefore, the appellant... And further, the appellant relies on Brown. Upon reading Brown, it's an unpublished opinion that in itself states cannot be used as precedent. And the shocking judge is the... Appellant wants to talk about egregiousness. Upon a simple reading of the transcript in Judge Lynn's ruling, it is apparent how egregious Judge Lynn took Mr. Mitchell's actions. Mr. Mitchell's actions were so egregious that Judge Lynn was well within her jurisdiction to render the judgment to him. The S.E. Judge's district court has authority to audit the return monies received by the appellant. First, I'd like to point your attention to the hearing transcript, page three, line 25, to page four, line one through four. Mr. Mitchell, in his own words, states, we do not deny that the addition of the estate prevented the court from having complete diversity. He admitted to that today as well. So he admits the court has no subject matter jurisdiction. It is longstanding law that the district court has inherent judicial power to avoid judgment. It's not Western cases, just jurisdictions to correct what was wrongfully done must remain with the court so long as the parties and the cases are probably before either in the first instance were remanded by an appellate tribunal. In this case, similar to the Morgan case, it's just the appellant's argument as well. The court doesn't have subject matter jurisdiction, so how can they audit return of money? Well, the Supreme Court in that case said, well, money was placed into the registry of the court. Because the order was void, that money had to be returned to the person that put the money in the registry of the court. Because the order was void, the actions were not proper. That's simply what we're asking the court to sustain the district court's finding. As this court stated, the district court has inherent power to enforce the rights of restitution. This is now accepted in the general stands along all the appellate tribunals in the country. That's Henry Craig Storrs of Texas. Finally, in the appellant's brief, page 14, paragraphs 9 through 10, the appellant states that he does not dispute that the district court has authority to correct what was wrongfully done. I was intrigued by your authorities, but I didn't hear you mention PICO. I'm sorry? I didn't hear you mention the PICO case, the 1990 decision by Judge Garwood, which I take to be Mr. Mitchell's primary authority for this race judicata point. That is that once the district court erroneously asserts jurisdiction, that it can't be undone by a Rule 60b4 motion. What's your stance on that? Judge, if that addresses, I apologize, I don't have that case in front of me. If that addresses that the appellant had, the defendant had the exercise to attack jurisdiction at that time, there's an exception where the activity is egregious in 60b, and Judge Lynn notes herself how egregious the appellant's actions are. And number two, because of the fact that this was hidden from state probate court, hidden from all the the defendant didn't have the opportunity to attack jurisdiction. Plus, if you look at the whole facts, why would he attack it? This was a whole scheme orchestrated to get the funds he was denied to twice. I mean, as long as money's not coming out of his pocket, why would he have an interest? That's why out of equity, they say successor, trustees, successor, administrators have the ability to do what Ronnie has has done in, you know, district court. Judge, does that does that help to, you know, does that address what you were questioning? I appreciate it. Thank you, Judge. Finally, so the by the appellate's own arguments, he admits subject matters jurisdiction is not there, and the court has authority to do what it wrongfully did because the judgment's wrong. In summary, Judge, appellate's brief and reply briefs do not make sense or illogical, including misinterpret the law, and just bluntly it's just silly. The district court probably granted summary judgment in favor of appellees, finding that there was no subject matters jurisdiction. A successor administrator of the estate and successor of the trust, Ronnie had every right to bring what he brought before the district court and the appellate court today, Judge. And even though the district court lacked jurisdiction, it probably used its inherent jurisdiction in ordering appellate to return their money they received when they briefed on the judgment to the appellate. Just as with the time left, the appellate desires to leave you with a few points from the hearing transcript and Judge Lynn's ruling. These are Judge Lynn's words from the transcript of the 60B4 motion hearing. Page 4, line 19 to page 5, line 3. This doesn't smell right. In essence, this case gets filed. All kinds of things are happening in state court I know nothing about. Mr. Larry Hodge was removed and this went through. Page 5, lines 4 through 10. The jurisdiction was created by your governor, Mr. Mitchell, or through pleadings that suggested the estate were the resident of California. He knew the estate were the resident of Texas, didn't he? Page 6, lines 23 to 25. The certainty was a lack of candor to the court. I'm in extreme trouble about that. Page 6, lines 10 through 17. I don't think this is accidental that you neglected to say how she died in Texas. I think you intended to do that. Page 9, lines 7 through 14. You're asking the state court to grant you attorney's fees. You are denied. You come here. Do not plead jurisdiction properly. And Eureka, the attorney's fees are awarded. Page 9, lines 15 through 17. I'm disturbed by this. I'm frankly sympathetic to the notion that this court may have gotten good work. Page 17, lines 4 through 5. This is a disturbing situation. Page 22. I think this court was misled. Page 23, lines 18 through 19. I'm very disturbed how this court, in my view, was misused and abused. Page 25, lines 10. This is a serious matter in the court's view. I feel the court was actively misled. Page 25, lines 17 through 19. It's not accidental that you pled the way you did. Judge Lynn's ruling, the first sentence says it all, Judge. This case is about how plaintiff's withholding of key facts resulted in this court becoming an unwitting vehicle for plaintiff's improper acquisition of funds. One final note, Judge. I mean, the case law speaks for itself, and the law is very clear. One final note. There's three beneficiaries. My two clients are two of the Rodney Hodge and Sherry Todd. They did not receive a cent from this estate. Larry had his attorney's fees paid by the estate, his individual attorney's fees. Mr. Mitchell converted in excess of $200,000 from the estate. Pretty much, the whole estate went to an attorney. A federal bankruptcy attorney licensed in seven federal jurisdictions with 24 years of experience. Justices, when attorneys act disintentionally and egregiously, it reflects on the holidays. I respectfully request that the trial court order is sustained. Thank you. All right, thank you, counsel. Mr. Mitchell, you get the last word, your rebuttal. Thank you, your honor. I'll kind of jump around a little bit to respond to points made by the appellee. I'll start with the last point and point out that all of the fees that were earned in this case on behalf of appellant were incurred as a direct result of the extremely lengthy litigation initiated by the appellee in this case. Larry Hodge's children simply decided to wage an all-out war and his attorneys were happy to go along. We were always in responsive mode in relation to those fees. Moving on, appellee has repeatedly referred to Judge Lynn's observations as if they are evidence, but her comments only explain why we're here today. The court should defer to the state court in determining whether anything was improper. A ruling in favor of appellee today would essentially render a judgment in favor of appellee prior to a trial in the merits. And at this point, all appellee is relying on are allegations. It would undo the entire federal case for which there was no jurisdiction to begin with and then this can all be sorted out in state court. We don't have a problem with that. I mean, the state court action is going to go forward. Why are we here? Well, I think primarily your honor, we think that the law supporting our appeal is why we're here because we don't believe that the district court acted properly. We believe that the appellee appeared and therefore is collaterally attacking a judgment that it has no business attacking and we believe that there is no need to order fees returned when all we have are allegations. I mean, appellee is repeatedly referred to the term conversion as if there had been a legal determination. In Judge Higginbotham's question, Mr. McDonald claimed that they should be returned because they had been converted. But then Mr. McDonald had to acknowledge that there's been no decision regarding the payment of those fees. And that's consistent with my point that as we sit here today, all we have are fees incurred, fees approved and fees paid. All we have on the other side are allegations. And then in response to Judge Oldham's question, Mr. McDonald could only point to these allegations. The trial court bypassed the principal law that a party that appeared can't collaterally attack a judgment by saying that Larry Hodge had been found to have breached his fiduciary duty to Miss Worthy and the proceedings to remove him as administrator and trustee were pending. In response to that, we would point out that the probate court had not found any impropriety in the payment of fees and a finding of a breach of fiduciary duty by itself does not render the payment of fees inappropriate. There's plenty of case law cited in our brief in support of the notion that a fiduciary's use of funds under their purview is appropriate in a good faith defense of a breach of fiduciary duty. And our brief, I think clearly explains how that defense was clearly in good faith. Rodney Hodge's suit had alleged that some $250,000 in expenses incurred were violative of Larry Hodge's fiduciary duty, but the jury only found a fraction of that in damages, an amount that was less than 20% of the total amount sought. That implies that with respect to the other 80%, there was good faith. And to that point, you don't even have to believe me, you can look at the state appellate court's decision that's in the record. Rodney appealed the judgment to the extent that they had been denied certain damages that were determined to be out of statute. In doing so, he alleged the application of the continuing tort doctrine. The state appellate court found, we believe correctly, that the continuing tort doctrine did not apply because the transactions were each discrete transactions and therefore not continuous tort. And in so finding, the appellate court pointed to the fact that despite seeking over $250,000 in damages, the jury only awarded less than 20%. And after application of the statute of limitation, the actual amount was closer to 10%. So once again, we end up back to where at this point, the only thing we have are allegations of wrongdoing and allegations should alter a principle of law as it relates to the collateral attack of a judgment in which a party appeared that has support all the way to the U.S. Supreme Court and it has support in this circuit as Judge Oldham mentioned with the PICO case as well as the Brown versus Illinois Centennial Railroad. And with that, I will conclude my remark. All right, counsel, we have both sides' arguments. We will get a decision out in due course and you're excused for the rest of the morning. Thank you, judges.